All right, we'll hear argument in our next case, Fidrych v. Marriott. Mr. Criswell. Thank you, Your Honor. May it please the Court, I'm Nathan Criswell for Budd and Patricia Fidrych, two citizens of South Carolina whose lives were completely turned upside down because a glass shower door at a Marriott Autograph Collection Hotel in Milan, Italy, literally exploded in lacerating veins in his hand, destroying his career as a pilot and changing forever their social and personal relationships. With the Court's permission, I'll address issues of jurisdiction by consent, specific jurisdiction, the default judgment, and sanctions in this case. So you're not going to address general jurisdiction, you're going to stick with specific? Well, no jurisdiction by consent. We refer to it as general jurisdiction by consent, yes, Your Honor. On November 5, 1997, Marriott International applied for and received a Certificate of Authority to do business in South Carolina. That was almost 10 years after the South Carolina Legislature adopted the South Carolina Business Corporation Act of 1988. Section 3315107 of that act, in the official comment, states, a foreign corporation that obtains a Certificate of Authority in a state thereby agrees that it is amenable to suit in the state. And there's several other statutory sections which reaffirm that proposition. Was that language in your brief? Excuse me, Your Honor? What you just quoted to the Court, is that included in your brief? Yes, it is, Your Honor. These official comments are not buried in fine print. On research services like LexisNexis, they appear immediately after the statutory text. Under these provisions of South Carolina law, Marriott has clearly agreed to and is legally subject to the jurisdiction of the Courts of South Carolina. And... Wouldn't the Supreme Court's decision in Damler cast some degree of doubt on that argument? Yes, Your Honor, and that's the point I wanted to address now, that the Supreme Court's decisions in Damler and Goodyear do not control this case or require a different result for several reasons. First, in both Damler and Goodyear, the defendants had not sought or obtained authority to do business in the respective states. Secondly, in both cases, the Court specifically excluded jurisdiction by consent from its analysis. In Damler, the Court, quoting Goodyear and referring to the Perkins decision, stated that, quote, Perkins remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum. Third... What's your best case from the South Carolina Supreme Court that says that commentary to the statute establishes the rule that you propose? I don't think there is a case from the South Carolina Supreme Court on that issue, but this is the statutory text and it's pretty clear in its consent. I thought you said it was commentary to the statute. The official commentary that was adopted by the legislature. But it's not in the statute? I think it's not the statutory text, but it follows immediately after and was from memory, so I may have this a little wrong. But in the federal courts, I think there's been litigation and jurisprudence over whether that type of language essentially can trump due process requirements for personal jurisdiction. There's a Florida statute, if I recall, has similar language, maybe getting states wrong. And is there a case that interprets statutory language like the South Carolina statute as establishing consent when confronted with due process arguments under the Constitution? Well, there are a number of cases that even in the absence of that statutory language have held that the Supreme Court's decision in Pennsylvania Fire, which goes back to 1917 and has not been overruled and has been reaffirmed, that even without the statutory language, that there is a constitutional basis for jurisdiction based upon consent. So the South Carolina situation is even stronger because we have this official commentary to the statute, which expresses a clear intent. Cases like the Florida case that you mentioned was one in which the statute has no language at all consenting to the jurisdiction of the courts. Your point is those are, at least on that issue, the statutes are distinguishable. Distinguishable, and we have a strong case based upon the statutory language. Third, and I want to get now to the rationale of Dambler and Goodyear. Those cases found unfairness and therefore a due process violation in what the court referred to as grasping. And that was subjecting a defendant to jurisdiction of the courts of a state simply based upon the extent of its business conduct in that state when there was no relationship between the controversy and the state. And the result of that was that any state could assert this grasping jurisdiction and major corporations would be subject to jurisdiction in every state. Now the facts of this case, the grasping concept and the underlying rationale of Dambler and Goodyear do not apply to this case. First of all, South Carolina has a legitimate interest in exercising personal jurisdiction in this case. That is providing a local forum to the citizens of its state when a corporation has applied for, obtained authority to do business, and does business with the citizens of the state, including the feed reaches. The statute that you referenced in the commentary to 107, I'm not finding that in your brief. It may have been that in our brief we cited to the statutes at large where it was originally enacted. You cited the 3315-105. And that has been codified in section 107. Do you cite, what page in your brief do you discuss this commentary? I don't have my brief right in front of me, but I believe. Well you can show us on rebuttal because I'm not finding it. Okay, well I believe we did cite to the statutes at large which then became codified in 3315-107. Okay, well you can look at that and tell us for sure on rebuttal. Yes, your honor. But before you continue with the distinguishings, I want to make sure I understand the general jurisdiction argument. Would you agree that outside of the statute that the Dimer case and the Goodyear case and their interpretation of whether a corporation would consider the state to form to be at home, would that control absent the statutory language? No, it would not, your honor. There are a number of court decisions that have held that jurisdiction by consent is constitutional even without the statutory language. And I called the court's attention to, this is a case decided a couple of months ago by the Kansas District Court, the Freedom Transportation, Annie v. Navistar International Corporation. And the court in that case concluded that the Supreme Court has not overruled Pennsylvania Fire and other cases sanctioning consent by registration either explicitly or effectively by adopting international SHU. Second, federal courts had endorsed the concept of consent by registration since international SHU. And the court in Daimler distinguishes general jurisdiction from instances of consent. And there are other cases like that that have upheld jurisdiction based upon consent as constitutional despite Daimler and Goodyear. Now, we don't say that a jurisdiction by consent doesn't raise constitutional questions. It might. But on the facts of this case, the exercise of jurisdiction would be constitutional because the grasping concept that the Supreme Court referred to in that case does not apply here. South Carolina has a legitimate interest in opening its courts to citizens of the state when a corporation has applied for, obtains authority to do business in the state, and does business in the state. And in addition to that, there's no risk of jurisdiction by any courts around the country. If the jurisdiction is limited to the resident of the state, as the Fiedrich's were, there's no other state that can exercise that jurisdiction. There's no other possibility of grasping. So we think it's quite clear that jurisdiction based upon consent can be constitutional. Excuse me. Yes, Your Honor. I want to make sure I heard what you said, Roy. Are you saying if plaintiffs have no jurisdiction over Marriott in South Carolina, they have no other forum in the United States with which to bring their lawsuit against Marriott? No, no. They do have the forum of where Marriott is at home. That is in Maryland and place where it's important. I misunderstood what you said. But in terms of general jurisdiction by consent, there's no other state, Kansas or North Carolina or whatever, the concept of grasping where all of these states could handle the case wouldn't apply. It would only apply where the state is at home. But for your argument under the registration statute in the commentary, you would not have a case in terms of general jurisdiction? Well, no, we would have a case because like the Mavistar case that I just quoted and there are a number of other district courts that have found that jurisdiction by consent is constitutional regardless of the statutory language. As you call it, jurisdiction by consent is based on your interpretation of statute. My question was meant to indicate if we disagree with you with respect to the implication of a commentary, then for a general jurisdiction issue, you would not have a case? You're not contending that Marriott is at home in South Carolina? Well, we did contend in our brief that there are distinctions between this situation and Dambler and Goodyear, but we rest on our brief on that general point. Okay. Let me turn now to the issue of specific jurisdiction. The court in ALS Scan in 2008 and 2002 dealt with the situation of electronic commerce and how specific jurisdiction concepts developed by the Supreme Court would apply in the electronic commerce field and adopted a three-part test as we read the decision to apply general specific jurisdiction concepts to the specific situation of electronic commerce. We think the facts of this case clearly show specific jurisdiction. Under ALS, the defendant must direct economic activity in the state. Now, in the ALS case, the defendant, Digital, had a passive website. It was operating in Georgia. The case was brought in Maryland. It had nothing to do with Maryland other than the fact that a Maryland person could see the website, but there was no interaction with Maryland. The website did not allow users to contract with, transfer funds to, or otherwise transact business with Digital. Marriott's website, by contrast, is highly interactive. You can obtain information, book rooms, book vacations, obtain special deals, purchase Marriott-sponsored products, sheets, pillowcases, all of these things, you can do that on the Marriott website. So, under the first prong of ALS... You could do that in India or Greenland or Montana just as well as you could in South Carolina. That's correct, Your Honor. And I think this is a place where Marriott attempts to use a general jurisdiction argument and improperly use it with regard to specific jurisdiction. If a company like Marriott does business throughout the country and has a website that has drop-down menus throughout the country, that doesn't subject them to general jurisdiction. That's what the Supreme Court said in Dammler and Goodyear. But it does subject them to specific jurisdiction, not the drop-down menu in and of itself, but that conduct shows that it has manifested an intent to engage in economic activity in the state and that it is, in fact, engaging in that economic activity. So, it meets those prongs of specific jurisdiction as set forth in the ALS scan case. Let me ask you, I know you have allegations related to express and implied contract and kind of, for the sake of this discussion, assume there's no contract, that with through Marriott, but then goes and has this accident. So, all they've done is browse the website. Do you think that creates specific jurisdiction? Well, I think there's a lot more here than browsing the website. Yeah. There was browsing the website, which led to authorization to to book the rooms on Bud's behalf and other crew members booked in their names, Marriott rewards given to them. And in addition to that, our complaint is not limited to a contractual complaint against Marriott. Our complaint alleges vicarious liability of Marriott for the Boscolos conduct based upon a variety of theories, including, in particular, apparent agency and control. So, there's a lot going on here in South Carolina that would justify specific jurisdiction. The Supreme Court has said... Go back, go back. Tell us again what transpired in South Carolina other than your client viewing the website. That was the main thing that occurred in South Carolina. The hotel room was then, he authorized Universal, the booking agent, to book the room. The room was booked. He didn't do it in South Carolina and there aren't any pleadings of anybody in South Carolina booked it or had anything to do with it. Well, this court has said that with regard to when there is a dismissal of a complaint based upon lack of jurisdiction without a hearing being conducted that all inferences drawn from the complaint, all reasonable inferences should be drawn. And in this case, I think it's a reasonable inference that this viewing of the website took place in South Carolina. But even if it did... I don't think they're arguing about that, but I don't know what you can infer other than that. Well, he viewed the website. He authorized the booking of the hotel from the website. Had the Boscolo hotel not been on the Marriott's website... A specific jurisdiction requires there to be particular actions in the jurisdiction. So what I'm asking is what other than your client looking at the website happened in South Carolina? Well, when you're talking about electronic commerce, the viewing of the website is the essence of electronic commerce. People view the websites, they order products or they order services as they did in this case. That's the essence of the transaction. So what's your jurisdiction? I would say the best case is probably the Zippo case that this court adopted in ALS, where the court indicated that if there is active use of the website, that that is the classic case in which there should be jurisdiction. I only have just a few seconds left. I just want to make two points. One is about the sanctions. Judge Duffy, when Judge Duffy granted the motion to reopen the default judgment, invited the plaintiff to seek sanctions. We had substantial time and expenditure preparing for the hearing that was only canceled 13 days before the hearing was scheduled. And nonetheless, Judge Hendricks found that these fees that we saw were excessive and not causally related to the default judgment. We were very careful in our motion for sanctions to identify only conduct that was directly related to the default judgment. The fees were reasonable. The fees were based upon standard hourly rates. I know your time has expired, but let me ask you a couple of questions just on the sanctions. So there seems to be some pushback from opposing counsel with the concept of jurisdiction. Did the district court have jurisdiction to issue sanctions? So what's your, just succinctly tell us, the jurisdictional basis for the district court to act if it were to? I think we addressed that point in our brief, and I don't remember the exact citations now. Just give us a quick synopsis. I think a court has inherent authority to police proceedings before it and to award sanctions. And in fact, the whole concept of sanctions after default judgment has been reopened. It's a less severe sanction than a default judgment, and implicit in that is the concept that the court has jurisdiction to award sanctions. To follow up on Judge Agee's questions, if we were to say there's no jurisdiction over the defendant in this case, how can we sanction somebody, how can this person over whom we have no jurisdiction be sanctioned for a procedural mistake? Well, I think the court, in the factors that you look at for good cause, one is whether there are less severe sanctions. No, I'm just talking about the imposition of sanctions. Forget how much or why, but for a procedural mistake, how do you sanction a party over whom you have no jurisdiction? Well, I think you do have jurisdiction. No, you have to assume for the purpose of my question, there is no jurisdiction. I know that's not this case, and I know it's a hypothetical. But if there's no jurisdiction over a party, how do you sanction them for what is effectively a procedural miscuse? Well, if it were a case where the defender was a foreign corporation, they never appear in the case, and you try to sanction them, I don't think you could do that. But here, they did appear, and they moved to overturn the default judgment. I think the court has clean-up jurisdiction over them as a result of moving to overturn the default judgment. Do you agree that they could have taken the risk and just not appear, and then challenged a subsequent damage award on the basis of lack of jurisdiction? Sure. Like they're in another jurisdiction, for example? Yeah, they absolutely could do that, but they run a risk there because they lose all other possible defenses, and they don't have an opportunity for discovery or any of that. They do, but if they're right, and the case is dismissed for lack of subject matter jurisdiction or personal jurisdiction, are they sanctionable then? Sanctionable if they don't appear, and no, I don't think they would be sanctionable then for not appearing, and we wouldn't have had any of the costs associated with preparing for the damage hearing, hiring expert witnesses, and all of that. That all flowed from their conduct in moving to overturn the default judgment. So now we're going to punish them for appearing, and perhaps theoretically short-circuiting this case from the get-go? No, we're not punishing them for appearing. We're punishing them for failing to have proper policies and procedures in place so that they didn't go into default and didn't deal with the default judgment. They knew about... occurring outside of the court, and for them not having policies and procedures, that's got nothing to do with the court, what's going on in the court, and what the court can sanction them for for court-related activities. Well, I think the Supreme Court has said that there is inherent authority to sanction for conduct related to the proceeding, whether it's in court or not. But that presumes there's jurisdiction. Well, again, they have submitted themselves to jurisdiction for the purpose of overturning the default judgment. They didn't have to do that. Well, that may be the answer, that they've appeared. They have voluntarily appeared. But what's your best case, to follow up on Judge Agee's question, to sustain sanctions for that reason? I think in our brief, we did treat with that point, but I'll... You can look at your brief. Okay, thank you. Are you familiar with Cooter & Gell v. Hart Max Corporation? That could be. I'm not sure, Your Honor. Okay. Last question on this. Looking at the district court's disposition on sanctions, which is one sentence, is that sufficient upon which we can conduct appellate review without further explanation by the district court? Yes, I think it is sufficient because, first of all, the court has said that in terms of abuse of discretion, if the decision is irrational, that is one way in which you can find that there's been abuse of discretion. And for the court to say that the fees were excessive, implicitly means that there was some reasonable amount of fees, and it's irrational to deny fees completely. In addition to that, the court ignored well-established Fourth Circuit precedent that sanctions are mandated when you choose to overturn a default judgment as a lesser sanction. The court has said that that is required. Okay, thank you very much. We've got some rebuttal time. Not a lot, but a little bit. Mr. Leary? Good morning. Pleased to court. Paul Leary on behalf of the Appellee Marriott International. I had planned to address the arguments as they were presented in the briefs, meaning default judgment, jurisdiction, and sanction, but given the court's probe, I'd like to start with the jurisdictional issues and, frankly, save time for counsel searching his briefs. The public comment was nowhere to be found in their moving brief. At page 9 of their reply brief, they briefly speak to it. Therefore, it has been waived, and I will get into that public comment in a minute as to why it wouldn't apply. But as to jurisdiction, their main arguments are that Marriott was at home in South Carolina and that the domestication statute applies. Multiple courts have ruled consistently that they find it very difficult for general jurisdiction to be found over a corporate defendant in a form other than their place of incorporation or principal place of business. As you've heard, Marriott's home is in Maryland. They don't have a principal place of business or incorporated in South Carolina. Let me get you to step ahead. Sure. Reading this comment from the South Carolina Code Section 15-107, it says a foreign corporation that obtains a certificate of authority agrees that it is amenable to suit in the state. What does amenable to suit mean, in your view? I would say on that commentary, without any further explanation, perhaps that it's amenable to a service because they now have someone, an agent. That's why we have a domestication statute, so that we have someone that can receive service. It goes, in your view, to consent to receive service as opposed to whether or not there's personal or subject matter jurisdiction? Consent to general jurisdiction, correct. Frankly, from the Supreme Court case that speaks as onward, and certainly in the Ratcliffe case here in the Fourth Circuit, it's crystal clear you look to the language in the statute. It must be expressed, and there must be interpretation by the highest state court, or at least at the state court level, on whether the statute provides for express or provides for consent. Frankly, there is nothing in the official comment that talks about consent. And by the way, when this official comment came out... I guess we could certify the question to the South Carolina Supreme Court. Nobody's put that up as an option. They have not, but if you take a look at the expansive reading of the official comment, there was an amendment to that domestication statute. And that amendment focused on when consent was, in fact, to be conferred. And that had to do with tax liability purposes. So even after that public comment, you have an amendment to the statute where there is a section of that statute that does and can be interpreted expressly or otherwise to be consent to jurisdiction based upon doing business there for tax liability purposes. But again, as I mentioned, they did not raise it in their brief to begin with. And so we believe that argument has been waived. Getting back to their general jurisdiction argument, as in the Daimler opinion, basically rejected what the plaintiffs are now suggesting here, which is that general jurisdiction can be found in every state in which a company engages in continuous and systematic business. There are, in terms of doing business in South Carolina, and this is just for the purpose of some of the cases that have come down squarely when Marriott has challenged personal jurisdiction elsewhere, that where there were 6,200 hotels in the system as of 2017, 1.4% were located in South Carolina, of which Marriott didn't even own or operate. This falls far short, as evidenced even from the court. With respect to the general jurisdiction, there was a question asked about whether there was a case that we could look to. In the Fourth Circuit case of Ratliff, this court rejected a similar attempt to use South Carolina's domestication statute as a basis for subjecting foreign corporations to general jurisdiction. Here's why. The court found that an application to do business in order to fulfill a state requirement should be no special weight in the personal jurisdiction analysis. Most importantly, the court found, under the principles of due process that have been raised by this panel, requires a firmer foundation than mere compliance with a state domestication statute. We cited to the Mitchell Furniture case because the Supreme Court has weighed in on this and said there are occasions when a domestication statute, when there is expressed language and inferred by the court, could be interpreted that way. Your Honor mentioned Florida. We cite to the Wade case, Eleventh Circuit decision, the language is identical. The court there reviewed it and determined there that there was simply not enough to find that a foreign corporation had consented to the jurisdiction in that court under the same exact language. That's about as much as we can get as a comparison on that language. The plaintiff mentions Pennsylvania file insurance, a 1917 case, and they do cite to a couple of cases where they contend that consent can be inferred. Those cases, however, have expressed language in them that confers consent. There is no expressed language. South Carolina's domestication statute neither expressly provides nor has been construed by any court to provide that a corporation registering under the statute consents to general jurisdiction. If I could speak briefly about specific jurisdiction. As you've heard, the appellant is hanging their hat exclusively on a website. This is a website, and by the way, I heard today, but it's at odds a little bit with their brief, because in their brief they claim the liability of Marriott to the Fidrichs is tied to a contractual relationship. They have a little bit shifted now to say, well, it could also be vicarious liability through the website for conduct of another entity overseas. Their complaint says, I can't remember for sure the brief, but you may be right, I can't recall, but they clearly have causes of action for expressing implied contract and for negligence based on vicarious liability, so they've pled those two things at least. They have, but they've pled them through the website. There is no contract, I believe, as Your Honor recognized. Mr. Fidrich didn't book his reservation through the website. That's not a contract. No one would use websites if that was the case. If you were booking anything online, unless there is something that specifically asks you to enter into a contract, which there are on occasions, but that is not an implicit or implied contract by any means by simply making a reservation on a website. He did not, by the way, a third party did. There was actually no really specific reliance on the website. His co-pilot is the one that told him he had stayed there before, as he stated in his affidavit, so they decided to stay there for that reason. But there's nothing on Marriott's website indicating a manifest intent to engage in business or interact in South Carolina. This is a global platform, and as you mentioned, someone today in Dubai, someone in Kansas, someone in California can go on and look at the website. As this court in the Fourth Circuit decision of ESAB Group stated, a defendant that focuses generally on customers throughout the United States and Canada, and ours, Marriott, goes beyond that, without focusing on and targeting South Carolina, will not be subject to specific jurisdiction in South Carolina. The brief is silent on that. What if, again, going back to what I mentioned a second ago, and I realize this is not exactly what we have here, but if a South Carolina resident books a hotel through the Marriott website and pleads with specificity facts that would plausibly state an apparent authority agency claim, can the allegations, if they're sufficient, of apparent authority, and therefore vicarious liability, create specific jurisdiction for an action like this that happens overseas? No, because you would have to look at, first of all, the manifest intent to actually want to interact with a South Carolina resident, but let's assume that for a moment. There still has to be the showing that that interaction was the cause or related to the cause of the incident at question. You would have to show that what Marriott had done specific to South Carolina led to this, what is nothing more than a premises liability case, not putting aside the seriousness of the injuries. This is either a premises case or a product liability case because of a glass door that shattered. But vicarious liability is a legal theory that someone's entitled to plead, and I'm trying to, you know, and maybe it's your point. I think you're saying that whatever they do on their website, it sounds like you're saying has to be the calls or more closely related to the accident itself. That's exactly what Zippo said in all cases that have analyzed the interaction of a plaintiff and a website and a cause of action or a claim. Could Marriott have been sued by the plaintiffs in Maryland in this case? They were. They were sued? They lost. They took their same case, their same complaint. Everything was identical to Marriott's home, where they're at home. The court dismissed it there as well under a form of nonconvenience, which was one of our three arguments that we raised in this case as part of a motion to vacate default. But they already took it there. The court had ruled on it. It was fully briefed and argued. In that case, it was dismissed. But there's not jurisdictional bar there. It's just... Oh, no. No, no, no. I don't believe it was even raised there. Okay. So we believe certainly the ESAB case, which actually talked about a South Carolina resident online, there was some weight given to a drop-down menu that brought up South Carolina, and the next learned case that we cited to showed that that would be insignificant in terms of specific jurisdiction. To establish specific jurisdiction via website, plaintiffs must establish that Marriott targeted its website to South Carolina residents, and in particular, interactions with plaintiffs had the website while he was in South Carolina. We don't even know where he was at the time, and that interaction caused the incident. I'll next move to the sanctions piece, unless there's any other questions on jurisdiction. The court did not abuse its discretion in declining to award these sanctions. Your Honor, it's directly on point. We cite to the Constantine case, the validity of an order of a federal court depends upon the court having jurisdiction, both of the subject matter and the parts. If there is no personal jurisdiction, which was found here in this case by a district court, and then frankly on motion for reconsideration was reviewed again for error of law, there cannot be an award of sanctions. Does that mean... I mean, I understand that, I think, point conceptually, but is there any... I mean, if... This is, again, hypothetical, but if you were to behave in some way that's clearly disrespectful to the court, for example, in the course of contesting jurisdiction, and we were to agree with you that you didn't have jurisdiction, but you were to lie to the court or something related to that, are you saying we then tread into the Rule 11 and some other ethics code of conduct? And I would say that the court would probably be a little bit more liberal or free to do perhaps something that they found against court order precedent. So in that case, Your Honor, I think that might be the case. So where does the court's authority come from to do that? Whether it's the canon of ethics, whether there's another area where they have found an affront to the court, whether there's been a perjury, whether there's been something that was not done in the course of the scope of following your guidelines as a lawyer... Is that part of the court's inherent authority? Is it inherent authority? I'm not sure I could speak intelligently to that, Your Honor. I would not know if that would be inherent authority under the example I gave. Well, there seem to be a lot of cases from the Supreme Court dealing with sanctions as collateral proceedings. They start with the decision Insurance Corporation of Ireland Limited, and then a few years later, the case I mentioned to opposing counsel Cooter and Gell v. Hartman. And these deal with Rule 11 sanctions and other matters where there may be a lack of jurisdiction, either personal or subject matter, over the parties for the case in chief. But by virtue of appearing in the court, there is a sufficient nexus if there is sanctionable conduct under the court's authority, whether it's Rule 11 statute inherent authority, for there to be the entry of sanctions irrespective of how the case on the merits is dealt with. And I was guessing from the responses of opposing counsel he was not familiar with those cases. Correct. I am slightly familiar with one because I believe in that one instance, the difference was that the court found that there was personal jurisdiction. They found that there was no subject matter jurisdiction. So I believe in that case, they were able to at least retain, based upon personal jurisdiction, the ability to sanction under Rule 11. We don't have that here. And entering an appearance in a court to challenge a default judgment, to frankly answer a complaint under the federal rules, does not subject you to jurisdiction. It is the concept then of answering and or moving to vacate that you proceed in that court without risk of the court saying, oh, you showed up. But doesn't that subject you to a requirement to abide by the procedural rules of the court that when you're served with a complaint by a court with jurisdiction, then aren't you required to submit if you choose to participate to the procedural rules of the court? You are there to answer and respond. And one of the responses is, in all due respect, this court doesn't have subject matter jurisdiction, whether it's a 12B5 or 6. Yes, in a timely fashion. In a timely fashion. In accordance with the rules, which is what's alleged not to have occurred here. Correct. Correct. Well, if we assume that there is a jurisdictional basis for the court to have imposed sanctions and then move to whether or not there was an abuse of sanctions, the court's disposition of that issue is very short. It says that they agree with your client that the parliament's request for attorney's fees and costs is excessive and they have not shown an adequate causal link. Correct. Both of those may be correct, but there's no explanation by the court of why and how it or lack of a causal link. So we have a lot of cases where we'll say we can't conduct appellate review in that circumstance because the district court didn't tell us anything about its reason. So why would this case be different? I don't know if it would. You act upon what the district court's finding was without any indication of abuse of discretion. There were fees presented. I think of two points, perhaps. There were fees presented by counsel that the court may have considered in the context of where we are in this case in $86,000. I think rightfully so, but the court was found to be exorbitant. And so I think that is probably one reason. And the second, your honor, is they, this was an all or nothing. This was a home run or strikeout. There was no option to give this court discretion to perhaps ask for something more, less, perhaps to focus on only the motion to vacate. This was simply, these were our fees at $86,000 were entitled to them. The court did at page seven go through and at least comment on the excessiveness of it and did not see a causal link, but I don't think there's anything that would then take it to the total review based on that opinion. I have a minute left, your honor. Sorry to interrupt you. Speaking of all or nothing dispositions, is that what we're confronted with on this question of amount of sanctions? Just look at that. Is it affirm the decision that they're excessive or let's say no causally or excessive. Is it a take it or leave it or is any remand possible? Well, I don't know if there's a remand, first of all, because of the personal jurisdiction argument. But as to your question, it's really simply was there on the record anything that we could see that was an abuse of discretion rather than to have you interpret a lesser amount, which has never even been asked for as a measure of relief in this case. Okay. Thank you. To the extent now on the rebuttal, if there is a discussion on the default judgment, I'd be happy to just talk about it. The point I would make there is we have a district court that reviewed whether 55 or 60 applied and recognized right away that that was what he had to do. This was then reviewed by a separate district court judge who went through the entire analysis and did their own independent analysis and confirmed that there was no error of law in connection with the default judgment. With that, Your Honor, I yield my time. Thank you very much. Thank you very much. Mr. Crystal, you have a little bit of rebuttal time left. Thank you, Your Honor. First, with regard to Judge Trachler's question about jurisdiction, in our brief reply brief at the Sixth Circuit decision in Spradlin v. Richard, where the court stated, federal courts maintain jurisdiction over certain collateral issues even after the underlying action is dismissed for lack of jurisdiction. Just because a federal court is later found to lack subject matter jurisdiction in a particular matter does not give litigants a free pass with respect to any and all prior indiscretions that may have committed before the court. But in that case, jurisdiction had existed. The case may be over, but at the time, presuming something was done wrong, there was jurisdiction over the party. Well, yes, that may be the case. But as I think Your Honor pointed out, they have submitted themselves to the jurisdiction of the court for the purpose of making their motion to overturn the default judgment. When do you submit yourself? When you appear in the court or when you get served with a complaint, for example. I don't think just getting served with a complaint amounts to submission to the jurisdiction of the court. But further conduct does, entering an appearance, which they did, does submit. Well, the wrong that they were accused of doing was occurred between the time they were served and before they appeared in court, which was defaulting on the answer to the complaint, not responding in a timely manner. That may be, but it still seems to us that when the decision to set aside a default judgment, when one of the factors that is involved in that is the possibility of awarding sanctions, the court must be presuming that it has the authority to award sanctions when it's set aside a default judgment. Okay. All right. Thank you very much, Mr. Crystal. We'll ask the clerk to adjourn court for the day and we'll come down and recounsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., William B. Traxler Jr.